IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| Elen Monteiro De Lucena, Rafael Galvao De Lucena, Reshma Bharwani, Ismael Carlos da Silva, Vasanth Kumar Kota, Eugenia Hernandez Ramos, Marcelo Araki, and Marcela Araki, | ) ) ) ) ) ) | Case No.: 1:23-cv-10055 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| Ur Jaddou, Director, U.S. Citizenship and Immigration Services, | ) ) ) | |
| Defendant. | ) ) ) | |

## **COMPLAINT**

In 2008, Congress recognized that Defendant's visa program for victims of crime was broken because of bureaucratic delays. It therefore enacted interim work authorization and deferred action to provide victims of crime the benefits they needed to survive in the United States while they assisted law enforcement. Congress expected those interim benefits to be issued in 60 days; today Defendant reports it takes 60 months. Plaintiffs have waited between 11 and 48 months. As such, this Court should compel action on Plaintiffs' pending immigration benefit petitions.

### **PARTIES**

1.      Plaintiff Elen Monteiro De Lucena is a citizen and national of Brazil. Plaintiff Elen Monteiro De Lucena currently resides in Lowell, Massachusetts.

2.      Plaintiff Rafael Galvao De Lucena is a citizen and national of Brazil. Plaintiff Rafael Galvao De Lucena currently resides in Lowell, Massachusetts.

3.      Plaintiff Reshma Bharwani is a citizen and national of India. Plaintiff Reshma Bharwani currently resides in Houston, Texas.

4.      Plaintiff Ismael Carlos da Silva is a citizen and national of Brazil. Plaintiff Ismael Carlos da Silva currently resides in Everett, New Jersey.

5.      Plaintiff Vasanth Kumar Kota is a citizen and national of India. Plaintiff Vasanth Kumar Kota currently resides in Irving, Texas.

6.      Plaintiff Eugenia Hernandez Ramos is a citizen and national of Mexico. Plaintiff Eugenia Hernandez Ramos currently resides in Summerville, South Carolina.

7.      Plaintiff Marcelo Araki is a citizen and national of Brazil. Plaintiff Marcelo Araki currently resides in San Bruno, California.

8.      Plaintiff Marcela Araki is a citizen and national of Brazil. Plaintiff Marcela Araki currently resides in San Bruno, California.

9.      Defendant Ur M. Jaddou is the Director of the United States Citizenship and Immigration Services. In her official capacity—the only capacity she is sued in—she is in charge of adjudicating all immigration benefits petitions, including Forms I-918, I-918A, and I-765.

## VENUE AND JURISDICTION

10.     This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331.

11.     Under federal question jurisdiction, this Court can hear causes of action under the Administrative Procedure Act ("APA") challenging, *inter alia*, unlawfully withheld and unreasonably delayed agency actions. *See Califano v. Sanders*, 430 U.S. 99, 105 (1977).

12.     This Court can enter declaratory relief under 28 U.S.C. § 2201 as a remedy for a violation of the APA, though § 2201 neither confers jurisdiction nor provides a cause of action. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950).

13.     Plaintiffs have exhausted all administrative remedies, and exhaustion is not required for an unreasonable delay case. *Darby v. Cisneros*, 509 U.S. 137 (1993).

14.     Venue is proper in this jurisdiction under 28 U.S.C. § 1391(e) because Plaintiffs Elen Monteiro De Lucena and Rafael Galvao De Lucena live in this District and Division, and Defendant does business in this District and Division at its Boston Field Office. Because venue is proper for three Plaintiffs, it is proper for all of the Plaintiffs. *See, e.g., Gutta v. Renaud*, No. 20-cv-06579-DMR, 2021 U.S. Dist. LEXIS 27913, at *17 (N.D. Cal. Feb. 12, 2021); *Raju v. Cuccinelli*, No. 20-cv-01386-AGT, 2020 U.S. Dist. LEXIS 153269, at *1 (N.D. Cal. Aug. 14, 2020).

15.     Joinder is proper for these Plaintiffs under Federal Rule of Civil Procedure 20(a)(1)(A) because the Plaintiffs assert a right to relief jointly or severally with respect to and arising out of the same series of transactions or occurrences. *Gutta*, 2021 U.S. Dist. LEXIS 27913. As detailed below, the Plaintiffs all allege that USCIS has intentionally, systematically, and unreasonably delayed adjudication of their immigrant benefit request.

16.     Joinder is also proper for these Plaintiffs under Federal Rule of Civil Procedure 20(a)(1)(B) because all Plaintiffs present a common question of law: Plaintiffs all allege that the adjudication delays associated with their immigrant benefit requests are unreasonable under *Telecommunications Research & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70 (D.C. Cir. 1984). *See Gutta,* 2021 U.S. Dist. LEXIS 27913, at *18-20; *Ray v. Cuccinelli*, No. 20-cv-06279-JSC, 2020 U.S. Dist. LEXIS 235760, at *4 (N.D. Cal. Dec. 15, 2020). Further, upon information and belief, the Defendants will claim that it treats all of the Plaintiffs' petitions identically, thereby, basing its defense on a common set of facts.

17. Finally, joinder is proper because Plaintiffs allege that all of their delays stem from a common policy and practice to withhold and delay adjudication of bona fide determinations under Defendant's June 2021 policy.

## LEGAL BACKGROUND

18. Congress enacted the "U visa" statute in 2000 as part of a decades-long legislative effort to empower and assist law enforcement to investigate and prosecute crime against undocumented immigrants.

19. These efforts began with the Violence Against Women Act of 1994 ("VAWA"), Pub. L. No. 103-322, 108 Stat. 1796 (1994). To encourage foreign nationals to report domestic violence to law enforcement, VAWA created legal protections for foreign national victims. *Id.* at § 40701, 108 Stat. 1953 (codified at 8 U.S.C. § 1154(a)(1)). VAWA provided an effective tool for law enforcement to ferret out, investigate, and prosecute domestic violence among a vulnerable community that historically would not report such crimes for fear of immigration consequences. But VAWA fell short where the abuser was not an immediate relative. *Id.*

20. To address this gap in protections, in 2000, Congress created the U-Visa. *See* Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, § 1513(a)(2)(B), 114 Stat. 1464, 1533 (codified at 8 U.S.C. § 1101(a)(15)(U)).

21. U-Visas are available to foreign nationals who are the victims of "serious crimes," including but not limited to the following:

> Rape; torture; trafficking; incest; domestic violence; sexual assault; abusive sexual contact; prostitution; sexual exploitation; female genital mutilation; being held hostage; peonage; involuntary servitude; slave trade; kidnapping; abduction; unlawful criminal restraint; false imprisonment; blackmail; extortion; manslaughter; murder; felonious assault; witness tampering; obstruction of justice; perjury; or attempt, conspiracy, or solicitation to commit any of the above mentioned crimes.

8 C.F.R. § 214.14(a)(9).

22.　　Foreign national victims of such crimes who suffer direct and proximate harm as a consequence of such qualifying crime must acquire U-status "certification" from a "certifying agency" that states, *inter alia*, that the foreign national possesses important information about the crime and he or she will cooperate in the certifying agency's ongoing investigation or prosecution. 8 C.F.R. § 214.14(c)(2)(i).

23.　　A "certifying agency" is a "federal, state, or local law enforcement agency, prosecutor, judge, or other authority that has responsibility for the investigation or prosecution of a qualifying crime or criminal activity." 8 C.F.R. § 214.14(a)(2).

24.　　In effect, these law enforcement agencies *sponsor* the U-Visa on behalf of the crime victim because the law enforcement agency *needs* them to be present in the United States to assist in their investigations and prosecutions. By sponsoring U-Visas, law enforcement agencies offer protection to victims who assist their law enforcement efforts.

25.　　After obtaining the law enforcement sponsorship, the foreign national must complete and submit an application for U nonimmigrant status, comprising the U-Visa petition (Form I-918), the U status certification (I-918B), a personal statement, and other evidence of eligibility. *See* Form I-918 Instructions at 10-13 (Apr. 24, 2019) (available at https://www.uscis.gov/i-918 (then click on link to "Form I-918 Instructions") (last visited Jul. 5, 2022)).

26.　　In addition, "qualifying family members" of the victim may also acquire U-Visa. 8 C.F.R. § 214.14(f).  Such derivative beneficiaries' petitions succeed or fail with the principal applicant's petition.

27.　　Once a foreign national crime victim or their family member is "admitted" into the United States in U-Visa status, they have work authorization incident to status and, after three

years in such status, they may apply for lawful permanent residency (colloquially called a "green card"). However, Congress only allocated 10000 U-Visas per fiscal year. 8 U.S.C. § 1184(p)(2)(A).

28.     The U-Visa program was a rousing success. But the success of the program created two distinct problems.

29.     First, by 2007, it appeared law enforcement would certify more than 10,000 U-status applicants in a fiscal year. This would mean there would be more eligible U-Visa applicants than U-Visas available, leaving eligible applicants waiting until the following fiscal year for a U-Visa number. In turn, these applicants would go another year without work authorization or protection from deportation.

30.     USCIS addressed this over-subscription problem by creating a regulatory waiting list for eligible applicants who only had to wait for a U-Visa to be available. See 8 C.F.R. § 214.14(d)(2); New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. 53,014 (Sep. 17, 2007).

31.     "All eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status must be placed on a waiting list and receive written notice of such placement." 8 C.F.R. §214.14(d)(2) (emphasis added). Once the applicant is moved to the waiting list, he or she would receive deferred action (protection from removal) or parole (permission to physically enter the United States) and would have the right to apply for work authorization. *Id.*

32.     While this fixed the over-subscription problem, this lead to a second problem: an increase in processing times.

33.     In 2008, Congress recognized that wait times for the U-Visa waiting list were growing and U-Visa applicants now needed pre-waiting list work authorization.  154 Cong. Rec.

H10,888, 10,905 (Dec. 10, 2008) (statement of Reps. Berman and Conyers), 2008 WL 5169865.

The bill's sponsor stated U-visa applicants "should not have to wait for up to a year before they

can support themselves and their families" and added that USCIS should strive to issue work

authorization within 60 days of filing. *Id.* Congress therefore enacted pre-waiting list work

authorization for "any alien who has a pending, bona fide application for [U] status."

Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), Pub. L. 110-457, 122

Stat. 5044 (codified in part at 8 U.S.C. § 1184(p)(6)) (emphasis added). This "fix" would ensure

U-status applicants could swiftly get work authorization and allow them to make a living while

assisting law enforcement and waiting for a space on the waiting list, and then waiting for a U-

Visa to become available.

34.     While the Agency's waiting list started in 2007, the Agency refused to implement the

pre-waiting list work authorization program for 12 years.

35.     In response to dozens of losses in litigation related to unreasonably delayed waiting list

decisions—several in this jurisdiction—on June 14, 2021, the Agency implemented Congress's

2008 "bona fide determination" policy ("BFD"). *See* BFD Policies 1-39 [ECF No. 1-1].

36.     Under the Agency's BFD policy, it will provide a BFD to U-Visa applicants who meet

the following eligibility criteria:

      a.   A complete Form I-918

      b.   A complete Form I-918B submitted within 6 months of the certifier's signature;

      c.   A personal statement from the petitioner; and

      d.   The applicant does not present national security concerns and has not committed

         violent or dangerous crimes.

ECF No. 1-1 at 19.

37.     USCIS also considers "other relevant factors." *Id.* USCIS must then exercise its discretion to award or decline a BFD.

38.     If USCIS awards the BFD, the applicant acquires deferred action—protection from physical removal from the United States—and work authorization. *Id.* In this situation, USCIS issues a BFD notice and employment authorization document.

39.     If USCIS denies the BFD, USCIS simply conducts a complete and full waiting list determination.

40.     The analysis is identical for qualifying relatives; however, such analysis cannot take place until USCIS makes a decision on the principal' BFD. Like the other U-Visa benefits, the derivatives' cases rise and fall with the principals.

41.     The BFD process was intended to provide U-Visa applicants work authorization and deferred action faster than the waiting list process.

42.     One year into the program, USCIS has simply substituted the BFD process for the Waiting List process and unreasonably delayed it.

43.     Today, USCIS claims it takes 61.5 months to issue a BFD.

44.     USCIS claims it takes more than 5 years to ensure an application is complete and review the results of standard background checks; this is patently unreasonable.

## PLAINTIFFS' FACTS

### *Plaintiff Reshma Bharwani*

45.     Plaintiff Reshma Bharwani ("Bharwani") entered the United States on 2015-08-15 as a F1 student.

46.     On or about 2020-07-24, Bharwani was the victim of armed robbery in Houston, Texas.

47.     Bharwani reported the crime and assisted law enforcement's efforts.

48.     Bharwani suffered substantial harm as the result of these crimes.

49.     The relevant law enforcement authority in Houston, Texas, duly completed a Form I-918 Supplement B for Bharwani.

50.     Bharwani filed a complete Form I-918 on 2021-10-23.

51.     Bharwani's submission to USCIS included (1) a complete Petition for U Nonimmigrant Status (Form I-918), including all required initial evidence; (2) a complete and properly filed U Nonimmigrant Status Certification (Form I-918, Supplement B) submitted within 6 months of the certifier's signature; and (3) a personal statement from Bharwani describing the facts of the victimization.

52.     USCIS accepted Bharwani's filing and assigned the Form I-918 receipt number LIN2130350346.

53.     Bharwani also submitted a Form I-765 application for work authorization.

54.     USCIS accepted it and assigned it receipt number LIN2200150305.

55.     Bharwani's applications are pending at the Vermont Service Center.

56.     Bharwani later provided biometrics.

57.     Upon information and belief, USCIS has gotten the results of Bharwani's background checks.

58.     Bharwani has never been convicted of or charged with murder, rape, sexual abuse; offenses involving firearms, explosive materials, or destructive devices; offenses relating to peonage, slavery, involuntary servitude, and trafficking in persons; aggravated assault; an offense relating to child pornography; manufacturing, distributing, or selling of drugs or narcotics; or any other violent or dangerous crimes such as those previously mentioned.

59.     Bharwani cannot work.

60. Bharwani could be subject to physical removal from the United States at any time.

61. With a BFD Bharwani could work lawfully and be protected from physical removal from the United States.

62. Bharwani has been waiting more than 15 months for any action on the applications.

63. Bharwani has been waiting more than a year for a BFD

64. This wait is unreasonable and substantially unjustified.

*Plaintiffs Rafael Galvao De Lucena and*

65. Plaintiff Rafael Galvao De Lucena ("Galvao De Lucena") and Elen Moreno De Lucena ("Moreno De Lucena") entered the United States on 2015-10-15 on a tourist visa.

66. On or about 2019-03-15, Galvao De Lucena was the victim of carjacking, kidnapping, and intimidation in Lowell, Massachusetts.

67. Galvao De Lucena reported the crime and assisted law enforcement's efforts.

68. Galvao De Lucena suffered substantial harm as the result of these crimes.

69. The relevant law enforcement authority in Lowell, Massachusetts, duly completed a Form I-918 Supplement B for Galvao De Lucena.

70. Galvao De Lucena filed a complete Form I-918 on 2021-07-26.

71. Galvao De Lucena's submission to USCIS included (1) a complete Petition for U Nonimmigrant Status (Form I-918), including all required initial evidence; (2) a complete and properly filed U Nonimmigrant Status Certification (Form I-918, Supplement B) submitted within 6 months of the certifier's signature; and (3) a personal statement from Galvao De Lucena describing the facts of the victimization.

72. USCIS accepted Galvao De Lucena's filing and assigned the Form I-918 receipt number EAC2117850128.

73.     Galvao De Lucena also submitted a Form I-765 application for work authorization.

74.     USCIS accepted it and assigned it receipt number EAC2117850148.

75.     Simultaneously, Moreno De Lucena filed a complete I-918A. USCIS accepted it and assigned it receipt number EAC2117850153.

76.     The couples' applications are pending at the Vermont Service Center.

77.     The couple later provided biometrics.

78.     Upon information and belief, USCIS has gotten the results of their background checks.

79.     Neither has never been convicted of or charged with murder, rape, sexual abuse; offenses involving firearms, explosive materials, or destructive devices; offenses relating to peonage, slavery, involuntary servitude, and trafficking in persons; aggravated assault; an offense relating to child pornography; manufacturing, distributing, or selling of drugs or narcotics; or any other violent or dangerous crimes such as those previously mentioned.

80.     They cannot work.

81.     Both could be subject to physical removal from the United States at any time.

82.     With a BFD both could work lawfully and be protected from physical removal from the United States.

83.     They have been waiting more than 18 months for any action on the applications.

84.     They have been waiting more than a year for a BFD

85.     This wait is unreasonable and substantially unjustified.

*Plaintiff Ismael Carlos da Silva*

86.     Plaintiff Ismael Carlos da Silva ("da Silva ") entered the United States on 2018-03-27 Tourist Visa.

87.    On or about 2018-08-21, da Silva witnessed a murder and, during the shooting, he picked saved a 5 year old child in Long Branch, New Jersey.

88.    da Silva reported the crime and assisted law enforcement's efforts.

89.    da Silva suffered substantial harm as the result of these crimes.

90.    The relevant law enforcement authority in Long Branch-NJ, duly completed a Form I-918 Supplement B for da Silva .

91.    da Silva filed a complete Form I-918 on 2019-08-12.

92.    da Silva 's submission to USCIS included (1) a complete Petition for U Nonimmigrant Status (Form I-918), including all required initial evidence; (2) a complete and properly filed U Nonimmigrant Status Certification (Form I-918, Supplement B) submitted within 6 months of the certifier's signature; and (3) a personal statement from da Silva describing the facts of the victimization.

93.    USCIS accepted da Silva 's filing and assigned the Form I-918 receipt number EAC1925050402.

94.    da Silva also submitted a Form I-765 application for work authorization.

95.    USCIS accepted it and assigned it receipt number EAC2029051355.

96.    da Silva 's applications are pending at the Vermont Service Center.

97.    da Silva later provided biometrics.

98.    Upon information and belief, USCIS has gotten the results of da Silva 's background checks.

99.    da Silva has never been convicted of or charged with murder, rape, sexual abuse; offenses involving firearms, explosive materials, or destructive devices; offenses relating to peonage, slavery, involuntary servitude, and trafficking in persons; aggravated assault; an offense relating

to child pornography; manufacturing, distributing, or selling of drugs or narcotics; or any other violent or dangerous crimes such as those previously mentioned.

100.    da Silva cannot work.

101.    da Silva could be subject to physical removal from the United States at any time.

102.    With a BFD da Silva could work lawfully and be protected from physical removal from the United States.

103.    da Silva has been waiting more than 30 months for any action on the applications.

104.    da Silva has been waiting more than a year for a BFD

105.    This wait is unreasonable and substantially unjustified.

*Plaintiff Vasanth Kumar Kota*

106.    Plaintiff Vasanth Kumar Kota ("Kota") entered the United States on 2015-12-22 as an F1 student.

107.    On or about 2019-03-30, Kota was the victim of armed robbery in Alpharetta,GA.

108.    Kota reported the crime and assisted law enforcement's efforts.

109.    Kota suffered substantial harm as the result of these crimes.

110.    The relevant law enforcement authority in Alpharetta,GA, duly completed a Form I-918 Supplement B for Kota.

111.    Kota filed a complete Form I-918 on 2022-03-03.

112.    Kota's submission to USCIS included (1) a complete Petition for U Nonimmigrant Status (Form I-918), including all required initial evidence; (2) a complete and properly filed U Nonimmigrant Status Certification (Form I-918, Supplement B) submitted within 6 months of the certifier's signature; and (3) a personal statement from Kota describing the facts of the victimization.

113.    USCIS accepted Kota's filing and assigned the Form I-918 receipt number LIN2214950985.

114.    Kota also submitted a Form I-765 application for work authorization.

115.    USCIS accepted it and assigned it receipt number LIN2214951009.

116.    Kota's applications are pending at the Vermont Service Center.

117.    Kota later provided biometrics.

118.    Upon information and belief, USCIS has gotten the results of Kota's background checks.

119.    Kota has never been convicted of or charged with murder, rape, sexual abuse; offenses involving firearms, explosive materials, or destructive devices; offenses relating to peonage, slavery, involuntary servitude, and trafficking in persons; aggravated assault; an offense relating to child pornography; manufacturing, distributing, or selling of drugs or narcotics; or any other violent or dangerous crimes such as those previously mentioned.

120.    Kota cannot work.

121.    Kota could be subject to physical removal from the United States at any time.

122.    With a BFD Kota could work lawfully and be protected from physical removal from the United States.

123.    Kota has been waiting more than 11 months for any action on the applications.

124.    Kota has been waiting more than a year for a BFD

125.    This wait is unreasonable and substantially unjustified.

*Plaintiff Eugenia Hernandez Ramos*

126.    Plaintiff Eugenia Hernandez Ramos ("Hernandez Ramos") entered the United States on 1999-10-25 without inspection.

127. On or about 2008-06-09, Hernandez Ramos was the victim of Domestic Violence in Moncks Corner, SC.

128. Hernandez Ramos reported the crime and assisted law enforcement's efforts.

129. Hernandez Ramos suffered substantial harm as the result of these crimes.

130. The relevant law enforcement authority in Moncks Corner, SC, duly completed a Form I-918 Supplement B for Hernandez Ramos.

131. Hernandez Ramos filed a complete Form I-918 on 2018-12-12.

132. Hernandez Ramos's submission to USCIS included (1) a complete Petition for U Nonimmigrant Status (Form I-918), including all required initial evidence; (2) a complete and properly filed U Nonimmigrant Status Certification (Form I-918, Supplement B) submitted within 6 months of the certifier's signature; and (3) a personal statement from Hernandez Ramos describing the facts of the victimization.

133. USCIS accepted Hernandez Ramos's filing and assigned the Form I-918 receipt number EAC1907550682.

134. Hernandez Ramos also submitted a Form I-765 application for work authorization.

135. USCIS accepted it and assigned it receipt number EAC1907550702.

136. Hernandez Ramos's applications are pending at the Vermont Service Center.

137. Hernandez Ramos later provided biometrics.

138. Upon information and belief, USCIS has gotten the results of Hernandez Ramos's background checks.

139. Hernandez Ramos has never been convicted of or charged with murder, rape, sexual abuse; offenses involving firearms, explosive materials, or destructive devices; offenses relating to peonage, slavery, involuntary servitude, and trafficking in persons; aggravated assault; an

offense relating to child pornography; manufacturing, distributing, or selling of drugs or narcotics; or any other violent or dangerous crimes such as those previously mentioned.

140. Hernandez Ramos cannot work.

141. Hernandez Ramos could be subject to physical removal from the United States at any time.

142. With a BFD Hernandez Ramos could work lawfully and be protected from physical removal from the United States.

143. Hernandez Ramos has been waiting more than 48 months for any action on the applications.

144. Hernandez Ramos has been waiting more than a year for a BFD

145. This wait is unreasonable and substantially unjustified.

*Plaintiffs Marcelo Araki and Marcela Araki*

146. Plaintiff Marcelo Araki ("Araki") and Plaintiff Marcela Araki entered the United States on 2017-05-03. They are a married couple.

147. On or about 2017-09-12, Araki was hit with a skateboard by a passing Lift passenger in San Francisco, California.

148. Araki reported the crime and assisted law enforcement's efforts.

149. Araki suffered substantial harm as the result of these crimes.

150. The relevant law enforcement authority in San Francisco, duly completed a Form I-918 Supplement B for Araki.

151. Araki filed a complete Form I-918 on 2019-04-09.

152. Araki's submission to USCIS included (1) a complete Petition for U Nonimmigrant Status (Form I-918), including all required initial evidence; (2) a complete and properly filed U

Nonimmigrant Status Certification (Form I-918, Supplement B) submitted within 6 months of the certifier's signature; and (3) a personal statement from Araki describing the facts of the victimization.

153. USCIS accepted Araki's filing and assigned the Form I-918 receipt number EAC1915451359.

154. Araki also submitted a Form I-765 application for work authorization.

155. USCIS accepted it and assigned it receipt number EAC1915451381.

156. Plaintiff Marcela Araki also submitted a Form I-918A. USCIS accepted it and assigned it receipt number EAC1915451393.

157. Plaintiff Marcela Araki also submitted a Form I-765 application for work authorization.

158. USCIS accepted it and assigned it receipt number EAC1915451411.

159. Araki's applications are pending at the Vermont Service Center.

160. Araki later provided biometrics.

161. Upon information and belief, USCIS has gotten the results of Araki's background checks.

162. Araki has never been convicted of or charged with murder, rape, sexual abuse; offenses involving firearms, explosive materials, or destructive devices; offenses relating to peonage, slavery, involuntary servitude, and trafficking in persons; aggravated assault; an offense relating to child pornography; manufacturing, distributing, or selling of drugs or narcotics; or any other violent or dangerous crimes such as those previously mentioned.

163. Araki cannot work.

164. Araki could be subject to physical removal from the United States at any time.

165. With a BFD Araki could work lawfully and be protected from physical removal from the United States.

166.    Araki has been waiting more than 44 months for any action on the applications.

167.    Araki has been waiting more than a year for a BFD

168.    This wait is unreasonable and substantially unjustified.

*All Plaintiff Allegations*

169.    Plaintiffs relevant receipt numbers and dates of filing are as follows:

| First Name | Last name | Date of I918 Filing | I918 Receipt Number | I765 Receipt Number |
|---|---|---|---|---|
| Reshma | Bharwani | 2021-10-23 | LIN2130350346 | LIN2200150305 |
| Rafael | Galvao De Lucena | 2021-07-26 | EAC2117850128 | EAC2117850148 |
| Elen | Monteiro De Lucena | 2021-07-26 | EAC2117850153 | None. |
| Ismael Carlos | da Silva | 2019-08-12 | EAC1925050402 | EAC2029051355 |
| Vasanth Kumar | Kota | 2022-03-03 | LIN2214950985 | LIN2214951009 |
| Eugenia | Hernandez Ramos | 2018-12-12 | EAC1907550682 | EAC1907550702 |
| Marcelo | Araki | 2019-04-09 | EAC1915451359 | EAC1915451381 |
| Araki | Brazilian | 2019-04-09 | EAC1915451393 | EAC1915451411 |

170.    Plaintiffs submitted complete Forms I-918, I-918A, and I-918Bs. Further, all of the

Forms I-918 were accompanied by personal statement from the principal U-Visa applicant.

171.    USCIS recognized these forms as complete because it did not reject them under 8

C.F.R. § 103.2(a)(7)(ii).

172.    USCIS initiates background checks for U-Visa applicants within 15 days of issuing

receipts. These background checks include TECS checks and FBI names checks. If these

produce no "hits," not further background checks are completed. If these standard background

checks receive a "hit," an immigration service officer is tasked with resolving the hits.

173.    USCIS gets the results of FBI name checks within 48 hours.

174.    USCIS gets the results of the TECS checks immediately.

175. The second tier of checks that are only necessary if there is a "hit" can take weeks to months.

176. Upon information and belief, USCIS has run background checks for all Plaintiffs and received the results for all Plaintiffs.

177. No Plaintiff has a serious criminal background.

178. All Plaintiffs meet the policy guide qualifications to be eligible for a BFD and deserving of a positive exercise of discretion.

## FIRST CAUSE OF ACTION
### (APA – Unlawful Withholding or Unreasonable Delay)

179. Plaintiffs re-allege all allegations above as though restated here.

180. USCIS has either or both unlawfully withheld or unreasonably delayed bona fide determinations ("BFDs") and BFD Employment Authorization Documents ("EADs") for all Plaintiffs. 5 U.S.C. §§ 551(b), 706(1).

*A BFD is Discrete and Required*

181. BFD and EADs are required and discrete actions. *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004) ("SUWA")

182. This Court has jurisdiction in unreasonable delay claims over agency actions that are required and discrete. *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). In *Norton*, the Court noted:

> a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*. These limitations rule out several kinds of challenges. The limitation to discrete agency action precludes the kind of broad programmatic attack we rejected in *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990) . . . The limitation to *required* agency action rules out judicial discretion of even discrete agency action that is not demanded by law (which includes, of course, agency regulations that have the force of law).

*Id.* at 64.

183.    First, USCIS is required to make a BFD and EAD decision. *Barrios Garcia v. U.S. Dep't Homeland Security*, 25 F.4th 430, 441-52 (6th Cir. 2022).

184.    USCIS's policy guide makes it clear it has a two-step BFD process. First, it reviews the application to determine whether the I918 is complete—whether it includes the I918B certification and the personal statement; second, it reviews the results of the background checks to determine whether it should exercise its discretion to issue a BFD:

1. Principal Petitioners

USCIS determines a principal petition is bona fide if:

- The principal petitioner has properly filed a complete Petition for U Nonimmigrant Status (Form I-918), including all required initial evidence,[7] except for the Application for Advance Permission to Enter as a Nonimmigrant (Form I-192).[8] Required initial evidence includes:

  - A complete and properly filed U Nonimmigrant Status Certification (Form I-918, Supplement B) submitted within 6 months of the certifier's signature; and

  - A personal statement from the petitioner describing the facts of the victimization; and

- USCIS has received the result of the principal petitioner's background and security checks based upon biometrics.

ECF No. 1-1 at 19.

185.    USCIS confirms that it will review all petitioners pending and filed after June 14, 2021 for BFDs: "USCIS evaluates all petitions for U nonimmigrant status filed by noncitizens living in the United States[.] If USCIS determines a principal petitioner and any other qualifying family members have a bona fide petition and warrant a favorable exercise of discretion, USCIS issues them BFD EADs and grants deferred action." *Id.* at 21.

186.     USCIS chose to make the decision for a BFD and EAD required through its policy guide. *See id.*; *Barrios*, 25 F.4th at 441-52.

187.     Further, USCIS's general adjudicatory regulations require it to make a decision on all benefits where it promulgates a form. *See* 8 C.F.R. § 103.2(b)(19) (defining procedures for notification of approvals); *Id.* at § 103.3 (defining notification procedures for denials).

188.     Neither a statutory nor a regulatory timeline or deadline is necessary to show a "required" action under *SUWA. See, e.g., Barrios*, 25 F.4th at 454 ("The violation of a statutory deadline is not required to succeed on a § 706(1) claim.").

189.     Similarly, *a decision* is required even if a benefit is ultimately discretionary. *See SUWA*, 542 U.S. at 66 (citing *Safeway Stores, Inc. v. Brown,* 138 F.2d 278, 280 (Emerg. Ct. App. 1943) (noting a mandamus was appropriate even for discretionary judgments)),

190.     USCIS has a duty under the Administrative Procedures Act ("APA") to make BFDs and EAD decisions for all Plaintiffs "within a reasonable amount of time." 5 U.S.C. § 555(b); *see Barrios*, 25 F.4th at 454.

191.     Second, BFDs and EAD decisions are discrete acts.

192.     USCIS has promulgated Forms I-918, I918A, and I765. Decisions on these applications constitute an "order" under 5 U.S.C. § 551(6). Because this Court will not be directing the Agency *how to exercise its discretion* it will only be ordering it to take a discrete, narrow, limited, and easily identifiable decision, it is discrete. *SUWA*, 54 U.S. at 63-68.

193.     Because a BFD and EAD decision are required, discrete acts, this Court has jurisdiction to review Plaintiffs' unlawful withholding and unreasonable delay claims.

*Plaintiffs Allege Specific, Nonconclusory Facts that State a Plausible Claim*

194.     Plaintiffs here allege specific, nonconclusory facts that USCIS is unlawfully withholding

or unreasonably delaying final agency action on their BFD and EAD decisions. *Ashcroft v. Iqbal*, 556 U.S. 662, 679-80 (2008).

195.    Under *Iqbal*, Plaintiffs need only allege non-conclusory, specific facts that demonstrate a plausible claim to relief to state a sufficient claim under Rule 12(b)(6). *Id.*

196.    This is a two-step analysis. First, the Court should review the complaint for well-pleaded allegations—those allegations that are non-conclusory. *Id.* at 678.

197.    Second, the Court should assume all well-pleaded allegations as true and determine whether the complaint states a "plausible" claim. *Id.* at 679.

198.    This is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

199.    Tellingly, *Iqbal* does not instruct courts to determine the "merits" of the claim.

200.    This is an unreasonable delay under the factors laid out in *Telecommunications Research & Action Ctr. v. FCC ("TRAC")*, 750 F.2d 70 (D.C. Cir. 1984). Those factors comprise:

> (1) "the time an agency takes to make a decision should be governed by a 'rule of reason' "; (2) "[t]he content of a rule of reason can sometimes be supplied by a congressional indication of the speed at which the agency should act"; (3) "the reasonableness of a delay will differ based on the nature of the regulation; that is, an unreasonable delay on a matter affecting human health and welfare might be reasonable in the sphere of economic regulation"; (4) "the effect of expediting delayed actions on agency activity of a higher or competing priority . . . [and] the extent of the interests prejudiced by the delay"; and (5) "a finding of unreasonableness does not require a finding of impropriety by the agency."

*Id.*

201.    At the time of filing this Complaint, Plaintiffs' BFDs and EAD decisions been pending between 13 and 43 months.

202.    All of the *TRAC* Factors weigh in favor of compelling agency action. First, there is no rule of reason controlling USCIS's BFDs and EAD decisions.

203.   USCIS does not make them on a first in, first out basis.

204.   On June 14, 2021, USCIS declared that it would consider all pending U Visa applications and all future U Visa applications for BFDs and EAD decisions.

205.   Since that date, USCIS has not made BFDs or EAD decisions in chronological order.

206.   There is no "line." Rather, the pending U Visa applications are in a pool and USCIS choses the applications to decide at random.

207.   Under its new BFD policy, USCIS has substituted a vast majority of

208.   To the extent USCIS has a rule of reason for BFDs and EAD decisions, it does not apply it.

209.   The current BFD processing times demonstrate that USCIS has no rule of reason for BFD and EAD determinations.

210.   Whether USCIS has a rule of reason or whether it applies it in a particular case is a question of fact. *see Gonzalez*, 985 F.3d at n. 374-75.

211.   USCIS systematically prioritizes BFDs and EAD determinations for later filed petitions over earlier filed petitions for U-status waiting list decisions.

212.   There is no cap for BFDs and EAD determinations.

213.   USCIS's published processing times for BFDs and EAD determinations are inaccurate and they are not particularly helpful to determine what is reasonable:

> The average adjudication time says little about the unreasonableness of USCIS's delay in Plaintiffs' case; this number also does not alter how most (if not all) U-visa adjudications might be unreasonably delayed. We find it unhelpful to fixate on the average snail's pace when comparing snails against snails in a snails' race.

*Barrios*, 25 F.4th at 456.

214. Because the processing times only articulate when 80% of the BFDs and EAD determinations are decided, later-filed applications get U-status waiting list decisions ahead of earlier filed applications.

215. It has been the policy of USCIS to expedite BFDs for foreign nationals in removal proceedings or foreign nationals subject to a final order of removal upon a request from ICE, regardless of whether they are detained or non-detained.

216. USCIS has failed to follow its own policy in this case expediting BFDs and EAD determniations for those applicants in removal proceedings.

217. USCIS makes BFDs and EADs for derivatives whenever it makes a BFD or EAD determination for the principal, even if the petitions for the derivatives were filed years later than other principals.

218. USCIS has no demonstrable rule of reason.

219. To the extent it has a rule of reason, it must provide proof of such rule of reason *and* that it follows the rule of reason. *Id.* ("discovery is critical to understanding whether the U-visa process is a systematic line or not"); *Solis*, 2019 WL 8219790, at *14 (finding "USCIS has not established adherence to its own rule of reason such that court-ordered action on Plaintiffs' petitions would interfere with USCIS's other functions and activities.").

220. Therefore, this factor weighs in favor of a finding of an unreasonable delay.

*TRAC 2: Congressional Intent*

221. Second, Congress has indicated that all immigration applications for non-immigrant benefits, such as U-status waiting list decisions, should be made in 30 days:

> It is the sense of Congress that the processing of an immigration benefit Petition should be completed not later than 180 days after the initial filing of the Petition, except that a petition for a nonimmigrant status under section 1184(c) of this title should be processed not later than 30 days after the filing of the petition.

8 U.S.C. § 1571(b).

222.   USCIS strives to meet this six-month timeline, indicating that section 1571(b) does provide content for USCIS's timelines

223.   While § 1571(b) is not binding, courts should be mindful of its dictates: "we are mindful that Congress *has* expressed that immigration-benefit applications should be adjudicated within six months." *Garcia*, 2021 U.S. App. LEXIS 27444, at *51.

224.   Further, Congress indicated that it should take months, not years to adjudicate BFDs. *See* 154 Cong. Rec. H10,888, 10,905 (Dec.10, 2008) (statement of Reps. Berman and Conyers), 2008 WL 5169865. This factor favors finding that this delay is unreasonable.

*TRAC 3: Human Health and Welfare or Economic Regulation*

225.   Third, USCIS's BFDs and EAD decisions impact human health and welfare.

226.   Plaintiffs are unable to acquire deferred action.

227.   Plaintiffs are unable to acquire work authorization.  Without work authorization they are unable to provide for themselves and their families. Additionally, without work authorization to secure employment, they also lack the economic stability needed to further their rehabilitation and healing following their victimization.

228.   Plaintiffs are unable to seek a social security number, and without a social security number, they often cannot acquire a driver's licenses.

229.   This prevents them from enjoying the benefits of opening a bank account, paying into social security, and safely paying taxes.

230.   Plaintiffs are in jeopardy of being subject to physical removal from the United States.

231.   All of these deprivations impact Plaintiffs' health and welfare. This delay, therefore, affects health and welfare interests, not purely economic interests, and Plaintiffs' health and

welfare interests "are weighty, implicate health and welfare, and [demonstrate they] are harmed by principal petitioners' years-long wait to be placed on the U-visa waitlist." *Garcia*, 25 F. 4th at 444.

232.     Further, these allegations alone are sufficient to state a claim for unreasonable delay or unlawful withholding. *Id.*

*TRAC 4: Prejudice to Plaintiff versus Harm to Higher Priority Function*

233.     Fourth, compelling USCIS to make BFDs and EAD determinations would have no effect on a USCIS activity of a higher or competing priority.

234.     USCIS claims that timely adjudication of BFDs is a priority. Compelling agency action here would comport with USCIS policy.

235.     USCIS is treating Plaintiff differently than other U status applicants because it has made BFDs for later-filed applications.

236.     USCIS knowingly cites to inaccurate processing times to claim that Plaintiff's BFD is within processing times. In fact, USCIS stopped reporting processing times for such decisions in 2021.

237.     Compelling USCIS to make a BFD and EAD Determination for each Plaintiff would not push Plaintiff to "the front of the line" because there is no "line." USCIS does not make BFDs and EAD decisions on a first in, first out basis.

238.     Further, to the extent compelling USCIS to make BFDs and EAD decisions delays adjudication of earlier filed petitions, it only delays such decisions by the amount of time it takes an immigration service officer to decide one application. Upon information and belief, this time is matter of mere minutes. Thus, any effect is *de minimis* and has no impact on the overall adjudication waiting times or process.

239.     USCIS has sufficient resources to make BFDs and EAD decisions in a reasonable amount of time.

240.     Additional resources do not affect processing times; thus, the delays associated with BFDs and EAD decisions are not due to lack of resources. Despite the addition if adjudicators, the processing times have remained constant. Defendant has sufficient resources to adjudicate twice as many applications as it does.

241.     For example, in Fiscal Year 2018—October 1, 2017 to September 30, 2018—Defendant's adjudicators took 3.74 hours to make waiting list decisions.

242.     During that same time, USCIS dedicated 83 adjudicators to adjudicating solely U status petitions. *Solis v. Cissna*, No. CV 9:18-00083-MBS, 2019 WL 8219790, at *12 (D.S.C. July 11, 2019).

243.     Based on Defendant's reported actual adjudication times, USCIS could have decided at least 44,919 waiting list decisions (83 adjudicators x 40 hours x 50 weeks divided by 3.74 hours); this calculation does not include the additional 15 hours per week of overtime USCIS approved for these adjudicators at that time. *Id.*

244.     But Defendant reported only 22,785 completions for FY 2018. USCIS adjudicated approximately half of the U status waiting list decisions it should have.

245.     This is the same for FY 2019 and FY 2020.

246.     Upon information and belief, the relevant service centers have increased efficiency through procedural changes, rather than additional resources.

247.     In November 2019, USCIS proposed to raise application fees on various immigration benefits applications to ensure sufficient resources to adjudicate applications with no filing fees, like U status applications.

248. On the other hand, Plaintiff's interests are prejudiced by the continued delay. Plaintiffs are deprived of the right to deferred action and work authorization, a social security number, and for some a driver's license.

*TRAC 5: Agency Impropriety*

249. Fifth, it is not required to find agency impropriety to determine these delays as unreasonable.

250. But, upon information and belief, the Agency has intentionally slowed adjudication BFD and EAD decisions. It has regularly adjudicated half as many applications as its resources would allow.

251. Further, USCIS regularly represents in district courts around the country representations about its processing that it cannot prove. This is bad faith.

252. Finally, USCIS improperly

253. The *TRAC* Factors weigh in favor of this Court compelling USCIS to determine immediately whether Plaintiff should be put on the U status waiting list.

254. It is, however, inappropriate for this Court to make a decision on the merits of this case— whether the TRAC Factors militate in favor or against a finding of unreasonable delay— unless or until USCIS answers and submits to discovery.

255. Whether a delay is reasonable under the APA requires a case by case analysis.

256. Further, a declaration or affidavit from USCIS is an insufficient substitute for the actual reason for the delay contained in the certified administrative record.

257. This court cannot take judicial notice of inaccurate processing times, even if they are published on government website.

258.    62-months is an unreasonable delay for USCIS to decide whether to place a Plaintiffs on the U status waiting list.

259.    Once Plaintiffs have BFDs and EADs, they still have to wait years to actually receive a U status.

260.    These delays are substantially unjustified.

## EQUAL ACCESS TO JUSTICE CLAIM

261.    Plaintiffs re-allege all facts above as though restated here.

262.    Plaintiffs are all eligible for fees under the Equal Access to Justice Act.

263.    Defendant's BFD and EAD decision delays are substantially unjustified.

264.    No special circumstances preclude an award of fees.

## RESERVATION OF RIGHTS

265.    Plaintiffs reserve the right to add additional allegations of agency error and related causes of action under common law or the APA after receiving the certified administrative record.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF PRAY THAT THIS COURT WILL:

266.    Take jurisdiction over this case;

267.    Declare the delays described above as unreasonable;

268.    Order USCIS to make *bona fide* determinations and decisions on the pending work authorization applications within 14 days;

269.    Order USCIS to pay reasonable attorney's fees under the Equal Access to Justice Act or any other provision of law; and

270.    Any other order necessary to ensure justice.

January 9, 2022                                        Respectfully submitted,

*s/Bernard P. Wolfsdorf*
BERNARD P. WOLFSDORF
Wolfsdorf Rosenthal LLP
1416 2nd Street
Santa Monica, CA 90401
Tel: (310) 570-4088
bernard@wolfsdorf.com

Attorney for Plaintiffs